UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| RODRIGO A. PATZY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 16-507 (RMC) |
| JEFFREY GERRISH, Acting Chairman and President of the Export-Import Bank of the United States, | ) ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

Rodrigo A. Patzy, an employee at the Export-Import Bank of the United States and a Latino male, alleges that he was denied a promotion at the Bank because of his race, national origin, and gender, in violation of Title VII. Defendant responds that Mr. Patzy was not promoted because he was not the best qualified applicant for the position and moves for summary judgment. Having considered the parties' arguments and the record, the Court will grant Defendant's motion.

**I.     FACTS**

Rodrigo A. Patzy is a Latino male who emigrated from Bolivia and is now a citizen of the United States. Compl. [Dkt. 1] ¶¶ 7, 17. He has been employed by the Trade Credit Insurance (TCI) Division of the Export-Import Bank of the United States (the Bank) since 2002, and has been a Senior Loan Specialist, a GS-13 position, since 2006. Patzy Aff., Ex. 1, Def.'s Mot. for Summ. J. [Dkt. 28-2] at 2. In that capacity and for the time period relevant to this case, Mr. Patzy has been responsible for reviewing transactions underwritten by the Bank, particularly in the Southeast region. Kosciow Aff., Ex. 5, Def.'s Mot. for Summ. J. [Dkt. 28-6]

1

at 3. From 2008 until at least the events at issue in this case, Mr. Patzy's first-line supervisor was Miguel Cornejo, a Latino male and TCI Director. *Id.* at 2. Before 2008, Mr. Patzy's first-line supervisor was Jean Fitzgibbon, a white female and TCI Director. *Id*. At all times relevant to this case, Mr. Patzy's second-line supervisor was Walter Kosciow, a white male and Vice President of the TCI Division. *Id*.

In May 2012, the Bank posted two vacancy announcements for a single Supervisory Loan Specialist (TCI Director) hire, graded as a GS-14 position. The first vacancy announcement (M035-12-SB-665332) was open only to internal Bank candidates. Internal Vacancy Announcement, Ex. 2, Def.'s Mot. for Summ. J. [Dkt. 28-3]. The second vacancy announcement (D032-12-SB-654498) was external, *i.e.*, open to all U.S. citizens. External Vacancy Announcement, Ex. 3, Def.'s Mot. for Summ. J. [Dkt. 28-4]. Applicants who apply through internal postings are evaluated without preference. Kosciow Tr., Ex. 8, Def.'s Mot. for Summ. J. [Dkt. 28-9] at 119:10-120:20. However, military veterans who apply through external postings are entitled to a veteran's preference—if a veteran and a non-veteran external candidate are both similarly qualified for the job, the veteran will be preferred. *Id.* at 133:2-12. Mr. Patzy applied through both announcements. Patzy Tr., Ex. 4, Def.'s Mot. for Summ. J. [Dkt. 28-5] at 22:3-5.

Four candidates, pulled from both announcements, were interviewed for the position, including Michelle Miller, Sandra Donzella, and Mr. Patzy. Kosciow Aff. at 4. The interview panel consisted of Mr. Kosciow, Ms. Fitzgibbon, Mr. Cornejo, and a third TCI Director, Christine Gerges. *Id.* Mr. Kosciow was the Selecting Official. *Id.*

After the interviews, Mr. Kosciow determined that Ms. Miller, a white female, was the most qualified applicant and offered her the position. *Id.* She declined. *Id.* Mr.

Kosciow also determined that Ms. Donzella was the next-best qualified applicant. *Id.* However, Ms. Donzella was based in California, not Washington, D.C., and was unwilling to relocate. *Id.* Mr. Kosciow did not offer her the position. *Id.*

Mr. Kosciow was also made aware that, due to complications with a new electronic application form, three internal applicants, Johnny Gutierrez, a Latino male, Carlos Vidal, also a Latino male, and Anita Turi-Wright a white female, had inadvertently applied through the external announcement. *Id.* at 5; Kosciow Tr. 217:3-12. Although these applicants would have qualified for an interview had they applied through the internal announcement, because they applied through the external announcement and because none of them was a veteran, Mr. Patzy's veteran status precluded their interview. Kosciow Tr. 150:4-19. After consulting with the Bank's Human Resources Division, Mr. Kosciow reposted the vacancy announcement internally (M047-12-SB-711432), allowing the three to reapply, along with Mr. Patzy. Kosciow Aff. at 5; Second Internal Vacancy Announcement, Ex. 9, Def.'s Mot. for Summ. J. [Dkt. 28-10].

On the second internal posting, the interview panel included only Ms. Gerges and Mr. Kosciow. Kosciow Aff. at 5. Together they interviewed five candidates, including Mr. Gutierrez, Mr. Vidal, Ms. Turi-Wright, and Mr. Patzy. Gerges Aff., Ex. 10, Def.'s Mot. for Summ. J. [Dkt. 28-11] at 4. After the interviews were completed, Mr. Kosciow determined that Ms. Turi-Wright was the best qualified applicant and offered her the position. Kosciow Aff. at 5-6. She accepted. Mr. Patzy filed suit. *See* Compl.

Mr. Patzy alleges discrimination on the basis of race, national origin, and gender, in violation of Title VII of the Civil Rights Act of 1964.[1] 42 U.S.C. § 2000e *et seq*. The Bank argues that Mr. Patzy was not awarded the position because he was not always attentive to detail, did not have as much experience as Ms. Turi-Wright working with large, complex transactions, and did not perform as well as Ms. Turi-Wright on the technical component of the interview. Mr. Patzy contends that this explanation is a pretext to hide discrimination. The parties having completed discovery, the Bank has moved for summary judgment.[2]

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure states that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, a court must draw all justifiable inferences in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. The nonmoving party must point to specific facts showing that a genuine issue of material fact that requires trial. *Celotex*, 477 U.S. at 324. The nonmoving party may not rely

---

[1] The Court previously dismissed Mr. Patzy's retaliation claim. Mem. Op. (Nov. 9, 2016) [Dkt. 14]; Mem. Op. and Order (July 20, 2017) [Dkt. 20].

[2] Def.'s Mot. for Summ. J. (Mot.) [Dkt. 28]; *see also* Mem. of P. & A. in Opp'n to Def.'s Mot. for Summ. J. (Opp'n) [Dkt. 34]; Reply in Further Supp. of Def.'s Mot. for Summ. J. (Reply) [Dkt. 36].

solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id*. at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. "While summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of his obligation to support his allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Hussain v. Principi*, 344 F. Supp. 2d 86, 94 (D.D.C. 2004) (quoting *Calhoun v. Johnson*, No. 95-2397, 1998 WL 164780, at *3 (D.D.C. March 31, 1998)).

### III.   ANALYSIS

Title VII prohibits discrimination in the workplace because of an individual's race, color, sex, religion, or national origin. The "two essential elements of a discrimination claim" under Title VII are "that (1) the plaintiff suffered an adverse employment action (2) because of the plaintiff's race, color, religion, sex, [or] national origin." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court laid out a three-part burden-shifting test necessary to establish a claim for discrimination under Title VII: (1) the plaintiff must establish a prima facie case demonstrating that he was subjected to an adverse employment action under circumstances that would support an inference of discrimination; (2) the defendant then may offer a legitimate, non-discriminatory reason for its actions; if so, (3) the plaintiff must demonstrate that these non-discriminatory reasons were in fact pretextual justifications to hide discrimination. *Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003).

Once an employer asserts a legitimate, non-discriminatory reason for the action taken, the need to analyze the *prima facie* case drops away and "the district court must resolve

5

one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).

### A. Discrimination Based on Race and National Origin

#### 1. *Comparative Qualifications*

Lacking direct evidence of racial animus, Mr. Patzy asks the Court to infer discriminatory intent based on his superior qualifications as a candidate. "[W]hen an employer says it made a hiring or promotion decision based on the relative qualifications of the candidates, a plaintiff can directly challenge that qualifications-based explanation only if the plaintiff was '*significantly* better qualified for the job' than those ultimately chosen." *Adeyemi v. Dist. of Columbia*, 525 F.3d 1222, 1227 (D.C. Cir. 2008) (quoting *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006)) (emphasis in original). "In a close case, a reasonable juror would usually assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that the employer simply made a judgment call." *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998). Thus, the "qualification gap must be great enough to be inherently indicative of discrimination." *Adeyemi*, 525 F.3d at 1227.

The evidence in the record does not establish that Mr. Patzy was significantly more qualified than Ms. Turi-Wright. The Bank asserts that Ms. Turi-Wright was better qualified because she had previously worked and performed well at the TCI Division. Kosciow Tr. 205:9-18. In addition, Ms. Turi-Wright had worked at another division of the Bank where she had processed large, complex loans, and her immediate supervisor praised her diligence, ability to perform high volumes of work, and her attention to detail. Kosciow Aff. at 6; Kosciow

Tr. 205:19-22; *see also* Gerges Aff. at 4 ("Ms. Turi-Wright's broad range of experience as an underwriter would help meet the demands of this position as well as a portfolio that continues to become more complex."). Finally, Ms. Turi-Wright also performed well on the technical component of the interview, taking her time to consider the problem posed yet still quickly reaching the correct conclusion. Kosciow Tr. 219:15-220:6.

By comparison, the majority of Mr. Patzy's work has been with smaller, generally less-complex transactions, mostly renewals. Patzy Tr. 35:13-19; Kosciow Tr. 160:3-7, 215:8-19. As a result, Mr. Kosciow stated that Mr. Patzy's "analytical skills and preparation for the fiduciary responsibility of making high six to seven figure buyer credit decisions were deficient." Kosciow Decl., Ex. 7, Mot. [28-8] ¶ 4. He also added that Mr. Patzy's "ability to successfully mentor staff to advance their financial analysis skills for larger buyer credit transactions appeared compromised by his not having yet attained that level himself." *Id.* Finally, Mr. Kosciow was aware that Mr. Patzy sometimes suffered from poor attention to detail. Kosciow Tr. 162:4-164:20. Indeed, Mr. Patzy "stumbled" during the technical component of the interview, rushing through the problem and ultimately missing a key conclusion. Gerges Aff. at 4; Kosciow Tr. 217:15-219:10; Kosciow Interview Notes, Ex. 13, Mot. [28-14] (writing Mr. Patzy "did not take time – races thru [sic]").

Mr. Patzy relies on statements from Mr. Cornejo to advance his case, but Mr. Cornejo's reported perspective is incomplete because he did not sit on the interview panel for the second internal posting. Thus, while he praises the quality of Mr. Patzy's work, Cornejo Aff., Ex. 6, Mot. [28-7] at 2-3; Cornejo Decl., Ex. 2, Opp'n [Dkt. 34-2] ¶ 27, Mr. Cornejo has little to say about Ms. Turi-Wright. Mr. Kosciow and Ms. Gerges were the only interviewers in a position to compare the two candidates, and from that position both determined that Ms. Turi-

7

Wright's broader range of experience, including her work with larger, more complex transactions, made her the better candidate. Gerges Aff. at 3-4; Kosciow Tr. 205:9-206:5. Mr. Cornejo's belief that Mr. Patzy's experience with small, high volume transactions was the more important experience speaks very positively of Mr. Patzy, Cornejo Decl. ¶¶ 25-28, but Mr. Kosciow was the second-line supervisor and the Selecting Official who set the hiring criteria and believed that experience with complex work was more important. Kosciow Decl. ¶ 3.[3] Notably Mr. Cornejo does not dispute that Mr. Kosciow had had problems with Mr. Patzy's work in the past, even if Mr. Cornejo did not accord those problems the same weight as Mr. Kosciow. *See* Cornejo Aff. at 5-7.

As a result, the Court cannot say that Mr. Patzy was significantly more qualified for the position than Ms. Turi-Wright or that the "qualification gap [is] great enough to be inherently indicative of discrimination," such that a reasonable juror could infer discriminatory intent. *See Adeyemi*, 525 F.3d at 1227.

  2. *Selection Process*

Mr. Patzy also asks the Court to infer discriminatory intent based on procedural defects in the selection process. Although the exact defects are somewhat difficult to glean from the briefs, Mr. Patzy appears to challenge: (1) attempting to solicit candidates under only an internal vacancy announcement and thereby "denying" Mr. Patzy a veteran's preference; (2) reposting the internal vacancy announcement instead of offering the position to Mr. Patzy; and (3) removing Mr. Cornejo from the second interview panel after he had advocated on Mr.

---

[3] Mr. Kosciow testified in his deposition that he had previously told Mr. Patzy that the latter should work on larger, more complex transactions if he wanted to be promoted. Kosciow Tr. 212:6-215:9; *see also Fischbach v. Dist. of Columbia Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (finding the correctness of the employer's reason matters less than its sincerity). Mr. Patzy, however, did not take this advice. *Id.* at 215:20-22.

8

Patzy's behalf. "A violation of protocol may be probative of the employer's true motivation if (1) the violation is suspicious, in and of itself, (2) the agency inexplicably departed from its normal procedures, or (3) the violation inherently raises credibility questions." *Perry v. Shineski*, 783 F. Supp. 2d 125, 138-39 (D.D.C. 2011) (internal marks and citations omitted).

As to the first point, Mr. Patzy argues that an internal posting robbed him of his legitimate advantage as a veteran. While the lack of a veteran's preference is a normal consequence of an internal posting, Mr. Patzy does not deny that the Bank generally posts open positions internally. The second internal posting occurred only because of inadvertent errors by three internal candidates who applied only to the external posting. There is no evidence from which to infer that the internal postings in this case were designed to remove Mr. Patzy's veteran status as a factor in the selection. Even if Mr. Kosciow had a strong preference to hire internally, and even if this were a breach of protocol (which is not clear), the successful candidate was an internal applicant against whom, as with all other internal candidates, Mr. Patzy was not entitled to a veteran's preference.

As to the second point, Mr. Patzy argues that he was the second most qualified candidate after the first round of interviews and should have been offered the position when Ms. Miller turned it down. But his point starts with a false premise. Mr. Patzy supplies no evidence that Mr. Kosciow believed anyone other than Ms. Donzella was the second most qualified candidate. Kosciow Decl. ¶ 5. Further, Mr. Patzy identifies no policy or practice under which Mr. Kosciow would be required to offer the second-ranked candidate the position. *Cf.* McDowell Aff., Ex. A, Reply Mem. in Supp. of Def.'s Mot. to Dismiss, or in the Alternative, for Summ. J. [Dkt. 12-1] ¶ 5 ("[T]here is no law, policy, custom, or practice at the Bank to make subsequent offers from a selection certificate in the event that the selectee declines the Agency's

9

offer."). Mr. Kosciow reposted the internal vacancy announcement to allow internal candidates who had incorrectly filled out the new electronic application form the chance to apply.[4] Although Mr. Patzy chafes at having had to compete against more candidates, the Court cannot find that the other candidates' error entitles Mr. Patzy to the position by default, and no reasonable juror could find suspicious or infer discriminatory intent from an attempt to correct such a minor mistake.

As to the third point, Mr. Patzy fails to provide a factual basis from which to infer that Mr. Cornejo's removal from the second interview panel warrants suspicion, raises credibility concerns, or was otherwise outside normal procedures. Mr. Cornejo essentially removed himself from the second interview panel when he advised Mr. Kosciow by email that he had "a bias" towards Mr. Patzy because Mr. Patzy was "a friend." Cornejo Email, Ex. A, Reply [Dkt. 36-1].

Mr. Patzy stresses that Ms. Fitzgibbon participated on the first interview panel although from the outset she did not believe Mr. Patzy was qualified for the position and had told Mr. Kosciow as much. Fitzgibbon Tr., Ex. 3, Opp'n [Dkt. 34-4] at 99:5-102:7. But Mr. Patzy can identify no improper motive behind Ms. Fitzgibbon's participation on the first interview panel, which included all first-line managers. Even if Mr. Patzy were disadvantaged by Ms. Fitzgibbon's presence on the first interview panel, he identifies no facts that would tie her opinion to an impermissible reason. Mr. Patzy was afforded the same opportunity to interview on the same grounds as the remaining candidates. And, when it became clear that Ms. Fitzgibbon could not keep an open mind about Mr. Patzy's professional qualifications, Mr.

---

[4] Mr. Kosciow was aware of this error during the first round of interviews, but (a) could not re-post the position until an offer was made from the first round, Kosciow Decl. ¶ 5, and (b) appeared to prefer Ms. Miller as a "strategic" hire, *id.* ¶ 3.

Kosciow removed her from the panel. Kosciow Tr. 169:6-170:11. Neither Ms. Fitzgibbon nor Mr. Cornejo participated in interviewing candidates on the second panel.[5] Nothing about these uncontested facts would lead a reasonable juror to infer discriminatory intent.

### B. Discrimination Based on Gender

Mr. Patzy's Complaint also alleges discrimination based on gender. However, Mr. Patzy makes no reference to this claim in his opposition, and other than providing the genders of the various persons involved in this case, Mr. Patzy fails to allege, much less support with evidence, any facts demonstrating bias based on his male gender. His supporting facts can be summed up in a single conclusory statement: "[Ms.] Fitzgibbon does not like male candidates." Patzy Tr. 54:16-17. Conclusory allegations do not suffice to rebut a motion for summary judgment. *Greene*, 164 F.3d at 675.

### IV. CONCLUSION

Defendant's Motion for Summary Judgement, Dkt. 28, will be granted. A memorializing Order accompanies this Memorandum Opinion.

Date: February 12, 2019

ROSEMARY M. COLLYER
United States District Judge

---

[5] Mr. Patzy makes statements in his deposition suggesting a cat's paw theory of discrimination, whereby Ms. Fitzgibbon improperly acted through Mr. Kosciow. Patzy Tr. 51:25-53:16. That theory is neither elaborated upon in the opposition nor supported with evidence in the record.